UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


QUALITY EDGE, INC.,

        Plaintiff/Counter-Defendant,        Case No. 1:10-cv-278

v.        HON. JANET T. NEFF

ROLLEX CORPORATION,

        Defendant/Counter-Claimant.
_____/


**OPINION**

    Plaintiff Quality Edge, Inc., brought this action against Defendant Rollex Corporation seeking injunctive relief and damages for infringement of U.S. Patent No. 7,137,224 (the '224 Patent) for a vented soffit panel.[1]  As explained by the '224 patent:

> Soffit panels are generally well-known in the art, and serve to cover or enclose the underside of the eaves of homes and other buildings of the type having roof eaves which extend beyond and hang over the outside walls of the building. The purpose of the soffit panels is to hide the eaves from view, and prevent the use of the underside of the eaves as a nesting place for insects, birds and the like.

(Pl. & Def. Brs., Dkts 19 & 21, Ex. A, '224 Patent [herein "Ex. A"] col. 1, lns. 9-15).  Quality Edge alleges that Rollex's manufacture, use, sale, and/or offering for sale of Rollex's Stealth Soffit™ is an infringement of the '224 Patent.  Rollex has filed a counterclaim, alleging two counts: Declaration of Noninfringement of the '224 Patent, and Declaration of Invalidity of the '224 Patent.

---

[1] Quality Edge's complaint also alleges a number of related claims not at issue here:  Federal Unfair Competition, Common Law Unfair Competition, Unjust Enrichment, Business Defamation/Product Disparagement, Michigan Consumer Protection Act, and Declaratory Judgment that Rollex Cannot Assert any Federal or State Claims Against Quality Edge.

The case is now before the Court for claim construction pursuant to *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996).

## I. Issue

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman,* 517 U.S. at 372. Once the court has construed the patent, the question of infringement is a question of fact to be submitted to the jury. *Id.* at 384.

The parties' dispute centers on a narrow issue of claim construction pertaining to the phrase "a generally horizontal imperforate top wall" in independent claims 1 and 42 of the '224 Patent. Rollex contends that the proper construction of this phrase is "a top wall that has a generally horizontal orientation, when the vented soffit panel is installed under an eave, and does not include any perforations therein." Quality Edge argues that Rollex's proposed construction disregards the word "generally" in the context of the word "imperforate," which is impermissible under claim construction principles. Quality Edge contends that the disputed limitation: "defined by a generally horizontal imperforate top wall," should be construed as:

> [D]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves.

## II. Patent Claims

The '224 Patent has a total of 47 claims (*see* Def. Br. at 3-5; Ex. A, cols. 5-8). Only claims 1 and 42 are independent[2] (*id.*). Claims 2-41 are dependent on claim 1, and claims 43-47 are dependent on claim 42 (*id.*). Claim 1 is referred to as an apparatus claim, i.e., it claims a thing (Def. Br. at 3), as follows:

---

[2] "A dependent claim refers to another claim and includes all the elements of the other claim (independent or dependent) from which it depends" (Def. Br. at 3 n.1, citing 35 U.S.C. § 112, ¶ 4).

> 1. A vented soffit panel for building roofs and the like of the type having at least one eave with a soffit thereunder; comprising:
>
> a generally flat, imperforate base portion shaped to enclose at least a portion of the soffit when mounted in a generally horizontal orientation under the eave; and
> at least one vent channel portion extending along said base portion, and protruding upwardly therefrom; said vent channel portion having a generally trapezoidal lateral cross-sectional shape defined by *a generally horizontal imperforate top wall* and inclined perforate sidewalls with lower ends thereof connected with said base portion in a mutually spaced apart relationship to define a slot therebetween through which ambient air enters into said vent channel and flows through said perforate sidewalls to vent the eave; said perforate sidewalls being disposed at a predetermined acute angle relative to said top wall and said base portion, whereby when said soffit panel is installed in said generally horizontal orientation, said perforate sidewalls are hidden from view from a position underneath the eave.

(Ex. A, col. 5, lns. 10-31; emphasis added).

The other independent claim, claim 42, is referred to as a method claim, i.e., it claims a method of performing a task (Def. Br. at 4), as follows:

> 42. In a method for venting building roofs and the like of the type having at least one eave with a soffit defined thereunder, the improvement comprising:
>
> forming a plurality of vented soffit panels, each having a generally flat, imperforate base portion shaped to enclose at least a portion of the soffit when mounted in a generally horizontal orientation under the eave, and at least one vent channel portion extending along said base portion, and protruding upwardly therefrom, wherein the vent channel portion has a generally trapezoidal lateral cross-sectional shape defined by *a generally horizontal imperforate top wall* and inclined perforate sidewalls with lower ends thereof connected with said base portion in a mutually spaced apart relationship to define a slot therebetween through which ambient air enters into said vent channel and flows through said perforate sidewalls to vent the eave and the perforate sidewalls are disposed at a predetermined acute angle relative to said top wall and said base portion; and
> installing the soffit panels in a side-by-side, generally horizontal position under the eave, such that the eave is enclosed, and the perforate sidewalls are hidden from view from a position underneath the eave.

(Ex. A, col. 7, ln. 38–col. 8, ln. 20; emphasis added).

III. Legal Standards

In *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the Federal Circuit reaffirmed and further clarified the well-established principles of claim construction (*see* Pl. Br. at 2-3). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips,* 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111 (Fed. Cir. 2004). "[T]he claims are 'of primary importance, in the effort to ascertain precisely what it is that is patented.'" *Id.* (quoting *Merrill v. Yeomans,* 94 U.S. 568, 570 (1876)).

"[T]he words of a claim 'are generally given their ordinary and customary meaning,'" defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention …." *Id.* at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313.

As the *Phillips* court noted, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. In those circumstances, general purpose dictionaries may be helpful. *Id.*

When judicial construction is required, *Phillips* definitively established that the "ordinary and customary meaning" of a limitation is to be derived primarily from the intrinsic evidence (*see* Pl. Br. at 3). *See id.* at 1313-14. Therefore, the Court first considers the intrinsic evidence, namely

the claims themselves, the patent specification and, if in evidence, the prosecution history of the patent before the Patent and Trademark Office. *Phillips,* 415 F.3d at 1313-17; *Vitronics,* 90 F.3d at 1582. While district courts may also rely on extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treatises, extrinsic evidence is less significant in determining the legally operative meaning of disputed claim language. *Phillips,* 415 F.3d at 1317; *Vitronics,* 90 F.3d at 1582. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips,* 415 F.3d at 1321.

The claims "are part of a 'fully integrated written instrument,' consisting principally of a specification that concludes with the claims." *Phillips,* 415. F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (internal citation omitted)). "For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman,* 52 F.3d at 979).

IV. Claim Construction

The construction of the claim language at issue, while limited to a six-word phrase, is by no means clear-cut. Having considered the parties' well-briefed arguments, the Court concludes that Quality Edge's construction is correct based on the language and formulations of the '224 patent.

The essential issue is whether, in the claim phrase—"a generally horizontal imperforate top wall"—the word "generally" modifies only "horizontal" or modifies both "horizontal" and "imperforate." The parties advance differing arguments as the basis for their respective constructions of the phrase in the claim limitation. The Court has evaluated these arguments individually and on the whole pursuant to the standards in *Markman* and *Phillips*. The Court finds

Quality Edge's arguments logically sound and, on the whole, most consistent with the Court's examination of the intrinsic evidence.

### A. The Claim Language

Quality Edge argues that the grammatical construction of the language of claims 1 and 42 was purposeful and illustrates that "generally" modifies both "horizontal" and "imperforate," given the lack of a comma in the phrase "a generally horizontal imperforate top wall," whereas a preceding phrase, "a generally flat, imperforate base portion" contains a comma. Quality Edge contends that this distinction is significant because the essence of the '224 patent is that the imperforate base portion is solid in appearance, i.e., has no holes, while the top wall can contain perforations so long as they are not visible when viewed from underneath the eave.

The Court agrees that the grammatical distinction cited by Quality Edge is relevant and meaningful in construing the claim language. "In determining the true meaning of the language of the [claim], the grammatical structure and syntax thereof may be instructive." *Credle v. Bond,* 25 F.3d 1566, 1571 (Fed. Cir. 1994) (relying on the placement of commas in construing claim language). There is no doubt that the statement of the claims themselves is foremost in the hierarchy of claim construction. "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips,* 415. F.3d at 1314. Thus, it is logical that the comma is purposeful in the description of the base portion, which is both "generally flat" and imperforate. On the other hand, the lack of the comma in the closely following, similar phrase, "a generally horizontal imperforate top wall" logically indicates that the word "generally" modifies both horizontal and imperforate. The lack of the comma efficiently indicates that the top wall is both generally horizontal and generally

imperforate. It eliminates the needless repetition of the word "generally," which would be redundant and make the statement of the claim unnecessarily wordy.

The grammatical distinction is not so iron-clad, however, that it is definitive proof of the claim construction. As Rollex points out, Quality Edge cites no grammatical rule per se that supports its position, and this Court's extensive research found no clear rule of punctuation governing placement of the comma to achieve the construction espoused by Quality Edge. As Rollex also points out, the insertion of the comma in the phrase "a generally flat, imperforate base portion" is not consistent throughout the patent. In the "Detailed Description of the Preferred Embodiments," the same phrase is used without a comma (*see* Ex. A, col. 2, lns. 60-61).

Nonetheless, the omission of the comma is worthy of some weight in the overall analysis, particularly because the statement of the claims themselves is of foremost importance in construing the patent. *See Interactive Gift Exp., Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1331 (Fed. Cir. 2001); *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed. Cir. 1998) (the actual words of the claim are the controlling focus in the hierarchy of analytical tools). Furthermore, this grammatical construction is not inconsistent with any other component or aspect of the patent. *See Phillips,* 415 F.3d at 1314 (quoting *Markman*, 52 F.3d at 978) (the claims do not stand alone but instead are "part of 'a fully integrated written instrument'"). The "Background of the Invention" makes it clear that the advantage of Quality Edge's patented soffit is that it overcomes the drawbacks of existing soffits on the market, which although may be perforated or louvered to facilitate venting, "normally have exposed or visible vents, thereby detracting from the overall appearance of the structure" (Ex. A. col. 1, lns. 23-32). Thus, a key feature of the '224 patent is that

the perforations are hidden from view—not that the top wall is absolutely imperforate, which is consistent with the grammatical construction advanced by Quality Edge.

### B. The Words "Generally" and "Imperforate"

The authority cited by Quality Edge, and reviewed by the Court, fully establishes that the word, "generally" is commonly used as a word of approximation in patent claims, and further, that words of approximation are acceptably coupled with words describing absolutes, such as "rigid," "equalized," and "planar." *See, e.g., Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.,* 401 F.3d 1367, 1374 (Fed. Cir. 2005) ("the claims require only a 'generally uniform' thickness, not an exact uniformity"); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.,* No. 1:05–cv–2482, 2006 WL 6142860, at *10 (N.D. Ga. Sept. 18, 2006) (the word "generally" in the context of "rigid" may be construed to allow for some amount of deviation from exactly rigid); *Hypoxico, Inc. v. Colorado Altitude Training, LLC*, No. 02 Civ. 6191, 2008 WL 4129269, at *10 (S.D.N.Y. Sept. 4, 2008) ("pressure generally equalized with the ambient air pressure" means "close to but not necessarily the same as ambient air pressure"); *Precision Concrete Cutting, Inc. v. Concrete Sidewalk Solutions, Inc.,* No. 09–cv–00856, 2010 WL 1769489, at *4 (D. Colo. Apr. 30, 2010) ("generally planar cut" means cut largely or basically made along a plane since the "word 'generally' accounts for the fact that the cut may not be precisely along a plane"). Thus, the Court is not persuaded by Rollex's argument that Quality Edge's claim construction fails because "the words 'perforate' and 'imperforate' are inverse binaries, with one precluding any extent of the other entirely . . ." (Def. Resp. Br., Dkt 22 at 7).

Rollex argues that the ordinary meaning of "imperforate" supports Rollex's claim construction because the word "imperforate" means: "having no opening or aperture" and "lacking

perforations" (Def. Br., Dkt 21 at 11, citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 604, 873 (9th ed. 1988) and *Comaper Corp. v. Antec, Inc.,* 596 F.3d 1343, 1348 (Fed. Cir. 2010)). Rollex contends that the ordinary meaning of "imperforate" governs here because Quality Edge did not provide any special definition for the word "imperforate" (Def. Br. at 10). The Court likewise is not persuaded by this argument.

Despite the ordinary meaning of "imperforate," "words of approximation, such as 'generally' and 'substantially,' are descriptive terms 'commonly used in patent claims to avoid a strict numerical boundary to the specified parameter.'" *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) (quoting *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) (citation and quotations omitted). In this regard, the ordinary meaning of words of precision may be altered by words of approximation to avoid such strict boundaries:

> While the term "generally parallel," as the district court noted, is mathematically imprecise, we note that words of approximation, such as "generally" and "substantially," are descriptive terms "commonly used in patent claims 'to avoid a strict numerical boundary to the specified parameter.'" *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358, 1367 (Fed. Cir. 2001) (quoting *Pall Corp. v. Micron Separations, Inc.,* 66 F.3d 1211, 1217 (Fed. Cir. 1995)); *see,* e.g., *Andrew Corp v. Gabriel Elecs. Inc.,* 847 F.2d 819, 821-22 (Fed. Cir. 1988) (noting that terms such as "approach each other," "close to," "substantially equal," and "closely approximate" are ubiquitously used in patent claims and that such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts). And, while ideally, all terms in a disputed claim would be definitively bounded and clear, such is rarely the case in the art of claim drafting. In this case, exact parallelism is sufficient, but not necessary, to meet the limitation of the claim term "generally parallel."
> 
> It is undisputed in this case that ordinarily, "parallel" means "everywhere equal distant." *Anchor* [*Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*]*,* 252 F. Supp. 2d [838,] 852 [(D. Minn. 2002)] (citing MERRIAM-WEBSTER COLLEGIATE DICTIONARY 842 (10th ed. 1998)). Additionally, the relevant definition of "generally" is "in disregard of specific instances and with regard to an overall picture; on the whole, as a rule." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 945. Because the claim language itself expressly ties the adverb

> "generally" to the adjective "parallel," the ordinary meaning of the phrase "generally parallel" envisions some amount of deviation from exactly parallel. It is the claim limitation, as a whole, that must be considered in claim construction. *Apex,*[*Inc. v. Raritan Computer, Inc.,*] 325 F.3d [1364,] 1374 [(Fed. Cir. 2003)].

*Anchor Wall Sys.*, 340 F.3d at 1310-11.

Here, because the '224 Patent does not does not specify any special definition for the terms "generally," or "imperforate," the Court finds that the concept "generally imperforate," acceptably envisions some amount of deviation from exactly imperforate, contrary to Rollex's contentions. *See id.*, 340 F.3d at 1311.

### C.  Specification

Further evidence that the '224 patent did not use the term "imperforate" in an absolute sense is found in the specification, which expressly states that "the top wall … is *substantially imperforate*" and that the "[t]op wall [] does not have any *visually detectable* openings or apertures":

> In the example illustrated in FIGS. 1-3, the top wall 6 of vent channel 5 is *substantially imperforate*, and therefore does not permit air to pass therethrough. Top wall 6 does not have any *visually detectable* openings or apertures, but rather has an appearance substantially identical with the exterior surface of base portion 2, such that the same match. Top wall 6 is disposed in a generally horizontal orientation when vented soffit panel 1 is installed under an eave 4.

(Ex. A., col. 3, lns. 33-36; emphases added).

Rollex argues that it is unclear how the above excerpt "specifically states" that the top wall can have perforations, as Quality Edge contends, and that "nowhere does the '224 Patent mention that the horizontal imperforate top wall could have any perforations" (Def. Resp., Dkt 22 at 8; Def. Br., Dkt 21 at 9).  These arguments do not further Rollex's cause, even if literally accurate.  The specification's statement that the top wall is "*substantially imperforate*" and does not have any "*visually detectable*" openings clearly expresses that the top wall may have perforations.  To find

10

otherwise blindly disregards the presence and purpose of the modifiers "substantially" and "visually detectable."

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips,* 415. F.3d at 1315 (internal citations omitted). Ordinarily, "'[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.'" *Id.* at 1316 (citation omitted). However, limitations from the specification should not be imported into the claims. *Id.* at 1323.

In this case, giving credit to the cited language in the specification does not improperly "import" *limitations* from the specification. Rather, the language in the specification is naturally aligned with the claim language, both of which indicate that the '224 Patent is properly construed to encompass a top wall that is not absolutely imperforate, but instead "generally imperforate." The Court so concludes.

## V. File History

Quality Edge asserts that there is nothing in the file history that would alter the limitation provided by the '224 Patent itself. Rollex does not argue to the contrary. Thus, the Court concludes that the construction of the phrase "a generally horizontal imperforate top wall" is properly based on the above considerations, as evidenced by the claim limitations and the specification.

## VI. Conclusion

Having fully considered the parties' arguments and the '224 Patent record, the Court concurs with Quality Edge's construction of the disputed limitation. Accordingly, the phrase "defined by a generally horizontal imperforate top wall," is construed as:

>[D]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves.

An Order will be entered in accordance with this Opinion.


DATED: May 16, 2012          /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge