UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUALITY EDGE, INC.,

               Plaintiff/Counter-Defendant,          Case No. 1:10-cv-278

v.                                           HON. JANET T. NEFF

ROLLEX CORPORATION,

               Defendant/Counter-Claimant.
_____/

## OPINION

Pending before the Court are the parties' cross-dispositive motions in this vented-soffit-panel patent case, following this Court's Opinion and Order on the parties' asserted *Markman*[1] claim construction issues. Plaintiff Quality Edge, Inc. moves for summary judgment on the patent infringement claims (Count I of Plaintiff's Amended Complaint and Count I of Defendant Rollex Corporation's Counterclaim), and for dismissal, or in the alternative summary judgment, of Count II of Rollex's Counterclaim (Declaration of Invalidity of the '224 Patent) (Dkt 67). Defendant Rollex Corporation has filed a Motion for Summary Judgment that Claims 1 - 47 of the '224 Patent are Invalid under 35 U.S.C. § 112 (Dkt 70).

Also pending are four additional motions filed by Rollex: (1) Motion for Leave to Submit Expert Declaration in Support of Motion for Summary Judgment of Invalidity (Dkt 53); (2) Motion for Leave to Conduct Discovery (Dkt 56); (3) Motion for Leave to Submit Expert Declaration in Opposition to Quality Edge's Dispositive Motion Regarding Patent Infringement and Validity (Dkts

---

[1] *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372 (1996).

65, 66); and (4) Motion for Leave to Supplement Rollex's Opposition to Plaintiff Quality Edge's Motion Regarding Patent Infringement and Validity (Dkt 80).

After full consideration of the six pending motions and the parties' positions and submissions over the course of this litigation, the Court finds further argument unnecessary for disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d) (the Court has discretion to schedule oral argument or dispose of a dispositive motion without argument at the end of briefing). The Court grants Quality Edge's motion for summary judgment on the issue of patent infringement and the issue of invalidity for indefiniteness, and correspondingly, denies Rollex's motion for summary judgment on the issue of invalidity for indefiniteness. The Court denies without prejudice Quality Edge's motion for dismissal or, in the alternative, summary judgment on the remaining issues of invalidity. The Court denies Rollex's four evidentiary and discovery related motions, except the Court denies without prejudice the motion to conduct discovery (Dkt 56) with respect to issues of invalidity other than indefiniteness.

## I. BACKGROUND

Quality Edge, Inc., brought this action on March 23, 2010 against Defendant Rollex Corporation seeking injunctive relief and damages for the infringement of U.S. Patent No. 7,137,224 (the '224 Patent) for a vented soffit panel. As explained by the '224 patent:

> Soffit panels are generally well-known in the art, and serve to cover or enclose the underside of the eaves of homes and other buildings of the type having roof eaves which extend beyond and hang over the outside walls of the building. The purpose of the soffit panels is to hide the eaves from view, and prevent the use of the underside of the eaves as a nesting place for insects, birds and the like.

(Am. Compl., Ex. 1, '224 Patent, Dkt 17-1 at 6.)

Quality Edge's initial Complaint alleged eight counts: Count I—Patent Infringement; Count II—Federal Unfair Competition; Count III—Common Law Unfair Competition; Count IV—Unjust Enrichment; Count V—Tortious Interference with Business Relationship or Expectancy; Count VI—Business Defamation/Product Disparagement; Count VII—Michigan Consumer Protection Act; and Count VIII—Declaratory Judgment that Rollex Cannot Assert Any Federal or State Claims Against Quality Edge. These claims are essentially directed at Rollex's marketing and sale of a competitor soffit panel, the Stealth Soffit.™

On April 29, 2010, Rollex filed an Answer and Counterclaim alleging two counts: (1) Declaration of Noninfringement of the '224 Patent, and (2) Declaration of Invalidity of the '224 Patent (Dkt 5[2]). On that same day, Rollex filed a Request for Pre-Motion Conference pursuant to this Court's civil practice procedure, to file two dispositive motions:

1. Motion to Dismiss Count V (Tortious Interference with Business Relationship or Expectancy), and Count VIII (Declaratory Judgment that Rollex cannot Assert any Federal or State Claims against Quality Edge), under Rule 12(b)(6)); and

2. Motion for Summary Judgment of Non-Infringement of Quality Edge's U.S. Patent No. 7,137,224 (Count I of Plaintiff's Complaint).

After a Response by Quality Edge, the Court conducted a Pre-Motion Conference on the record with counsel to review the proposed dispositive motions and the parties' positions. Based on the representations of counsel at the Pre-Motion Conference, the Court entered an Order that:

---

[2]Rollex's Answer and Counterclaim to the Amended Complaint alleges the same two counterclaims (Dkt 18).

(1)     Plaintiff file an amended complaint[3] to substantiate the claims set forth in Counts V

        and VIII; and that Defendant's motion to dismiss these counts was deferred pending

        the filing of the amended complaint, after which Defendant may file a renewed

        Request for a Pre-Motion Conference;

(2)     the parties proceed with briefing the claim construction issues relevant to summary

        judgment of Count I (Patent Infringement) pursuant to the briefing schedule set forth

        in the order; and

(3)     discovery on all other matters would be deferred until the Court has ruled on the

        above claim construction issues or until further Order of the Court.

Following briefing on the claim construction issues, the Court conducted a *Markman*

hearing.  As framed by the parties on the record and in the briefing, the essential, and sole, claim

construction issue relevant to patent infringement was whether, in the phrase—"a generally

horizontal imperforate top wall," in independent claims 1 and 42 of the '224 patent, the word

"generally" modifies only "horizontal" or modifies both "horizontal" and "imperforate" (*see, e.g.*,

Dkt 19 at 4, 12; Dkt 21 at 10).

The parties each advanced proposed constructions of the phrase.  Rollex contended that the

proper construction was "a top wall that has a generally horizontal orientation, when the vented

soffit panel is installed under an eave, and does not include any perforations therein" (Dkt 21 at 14).

---

[3]Quality Edge filed an Amended Complaint (Dkt 17), deleting Count V (Tortious Interference with Business Relationship or Expectancy), thus alleging only seven counts:  Count I—Patent Infringement; Count II—Federal Unfair Competition; Count III—Common Law Unfair Competition; Count IV—Unjust Enrichment; Count V—Business Defamation/Product Disparagement; Count VI—Michigan Consumer Protection Act; Count VII—Declaratory Judgment that Rollex Cannot Assert Any Federal or State Claims Against Quality Edge.

Quality Edge argued that Rollex's proposed construction disregarded the word "generally" in the context of the word "imperforate," which is impermissible under claim construction principles. Quality Edge contended that the disputed limitation: "defined by a generally horizontal imperforate top wall," should be construed as:

> [D]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves.

(Dkt 19 at 13.) Quality Edge argued that this distinction is significant because the essence of the '224 patent is that the imperforate base portion is solid in appearance, i.e., has no holes, while the top wall can contain perforations so long as they are not visible when viewed from underneath the eave. *See Quality Edge, Inc. v. Rollex Corp.*, No. 1:10–cv–278, 2012 WL 1790026, at *4 (W.D. Mich. May 16, 2012).

On May 16, 2012, the Court issued its claim construction Opinion and Order, adopting the construction proposed by Quality Edge. *Id.* at *7. Rollex filed a motion for reconsideration (Dkt 37), arguing that the Court's construction impermissibly rewrote the claims to include additional elements lacking support in the claims and specification, and failed to consider the entire '224 Patent's description of the disputed terms. Rollex further argued that the additional elements contained in the adopted construction added ambiguity to the disputed claim language, rather than resolved ambiguity, thereby defeating the public notice function of patent claims because neither the public nor Rollex can ascertain the scope of the claimed invention or whether they infringe. Finally, Rollex argued that the Opinion failed to address or consider the patentee's use of "said imperforate top wall" in claim 23, the only recitation of "top wall" outside of claims 1 and 42, indicating that "generally" does not modify "imperforate," as pointed out by Rollex during the *Markman* hearing. This Court denied reconsideration, finding that Rollex's arguments were all

previously raised in Rollex's written submissions or at oral argument, and ruled on in the Court's May 16, 2012 Opinion and Order (*see* Dkt 40).

After the Court denied reconsideration, Quality Edge filed a Pre-Motion Conference Request (Dkt 41) to file a motion for summary judgment on patent infringement, asserting that the only limitation that Rollex challenged is unquestionably literally present in the Stealth Soffit under this Court's claim interpretation, and there was no genuine issue of material fact that Rollex's Stealth Soffit product literally meets all of the limitations of claims 1-4, 24, 26-33, and 35-47 of the '224 Patent.

Rollex filed a Response (Dkt 43) to Quality Edge's Pre-Motion Conference Request and filed its own Request (Dkt 44) regarding a proposed motion for summary judgment regarding invalidity of the claims of the '224 Patent, raising for the first time the argument that the Court's *Markman* construction rendered the patent invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2, because whether a device infringes the claims depends entirely on where an individual stands underneath the eaves. Rollex asserted that indefiniteness is an issue of law ripe for summary judgment, citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims.") (quoting *Personalized Media Commc's, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)).

Following a Status Conference/Pre-Motion Conference with the parties, the Court set a briefing schedule on the parties' cross-motions for summary judgment and deferred the Rule 16 scheduling conference pending the Court's decision on the dispositive motions. The parties

thereafter filed their respective dispositive motions, and Rollex additionally filed four evidentiary/discovery related motions.

## II. STIPULATED FACTS

The parties have stipulated to the following facts:

• At this time, the accused product is Rollex's Stealth Soffit. (Combined Statement of Facts [CFS], Dkt 76 ¶ 2)

• On August 26, 2010, Quality Edge identified claims 1-4, 24, 26-33, and 35-47 of the '224 Patent as being infringed (the "Asserted Claims"). (CFS ¶ 3)

• On May 16, 2012, the Court construed the limitation "defined by a generally horizontal imperforate top wall" to mean "[d]efined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves." (CFS ¶ 6)

• The Stealth Soffit is a vented soffit panel for building roofs and the like of a type having at least one eave with a soffit thereunder. (CFS ¶ 7)

• The Stealth Soffit has a generally flat, imperforate base portion shaped to enclose at least a portion of the soffit when mounted in a generally horizontal orientation under the eave. (CFS ¶ 8)

• The Stealth Soffit has at least one vent channel portion extending along the base portion and protruding upwardly therefrom. (CFS ¶ 9)

• The Stealth Soffit includes perforate side walls disposed at a predetermined acute angle relative to the top wall and the base portion. (CFS ¶ 13)

• When the Stealth Soffit panel is installed in a generally horizontal orientation, the perforate sidewalls are hidden from view from a position underneath the eave.  (CFS ¶ 14)

## III.  LEGAL STANDARDS

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  The court must consider the evidence and all reasonable inferences in favor of the nonmoving party.  *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008).

The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact.  *Slusher,* 540 F.3d at 453.  "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated."  *Id.*  "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint.  *Trs. of The Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling,* 555 F. Supp. 2d 838, 844 (E.D. Mich. 2008).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claim must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "'[W]hile liberal, this standard of review does require more than the bare

assertion of legal conclusions.'" *Id.* (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## IV.  PATENT INFRINGEMENT

Quality Edge moves for summary judgment of the parties' opposing patent infringement claims (Count I of Plaintiff's Amended Complaint and Count I of Defendant Rollex Corporation's Counterclaim).  Quality Edge argues that the only limitation Rollex challenged is unquestionably literally present in the Stealth Soffit under this Court's claim construction; therefore, Quality Edge is entitled to summary judgment finding literal infringement of claims 1-4, 24, 26-33, and 35-47. The Court agrees.

Summary judgment on the issue of infringement or noninfringement is available in patent litigation.  A determination of infringement involves two steps: first, the court determines the scope

and meaning of the asserted patent claims; and, second, the court compares the properly construed claims to the allegedly infringing device "to determine whether all of the claim limitations are present, either literally or by a substantial equivalent." *Innovention Toys, LLC v. MGA Entm't, Inc.,* 637 F.3d 1314, 1318-19 (Fed. Cir. 2011) (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*)); *see also Lisle Corp. v. A.J. Mfg. Co.,* 398 F.3d 1306, 1312 (Fed. Cir. 2005). The first step, claim construction, is a question of law. *Innovention Toys,* 637 F.3d at 1319. In contrast, infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Id.* "Accordingly, a court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Id.* (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)). When there are no genuine factual disputes about the characteristics of an accused product, and the claim construction shows that the accused product meets every limitation of the asserted claims, summary judgment finding literal infringement is proper. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 988 (Fed. Cir. 1999); *CollegeNet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1235-36 (Fed. Cir. 2005).

The issue of infringement was raised by the parties at the outset of this case as the threshold dispositive question—it set the course for these proceedings and was the exclusive basis for claim construction. Despite Rollex's protestations to the contrary, this issue is properly resolved as a matter of law. For the reasons that follow, the Court concludes that Quality Edge is entitled to summary judgment on the issue of infringement.

The parties first dispute whether the issue of infringement is ripe for decision as a matter of law. Quality Edge contends that summary judgment is proper because there is no genuine issue of

fact that Rollex's Stealth Soffit panels have "a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves," as demonstrated by Rollex's own wealth of advertising claims and materials. Quality Edge asserts that since the "generally horizontal imperforate top wall" limitation is the only one Rollex challenged, and is dispositive of the parties' infringement dispute, Quality Edge is entitled to summary judgment. Further, even if Rollex raises challenges concerning other limitations, there is no genuine issue of fact that the other limitations of the claims are present in the Stealth Soffit products.

Rollex takes a far contrary position. Rollex asserts that "[p]atent infringement 'is an issue of fact'" (Rollex Resp., Dkt 73 at 11, quoting *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1370 (Fed. Cir. 2012) (internal citations omitted)). Rollex argues that there are genuine issues of material fact as to whether the accused Stealth Soffit meets at least two limitations of the claims of the '224 Patent – the top wall limitation and the "generally trapezoidal" limitation (*id.* at 12, citing Responses to SMF ¶¶ 10, 11; SMF ¶¶ 53, 56-57, 67).

The problem with Rollex's position is that it is wholly inconsistent with Rollex's litigation of this case to date and the representations on which the Court relied in determining the course of this patent case, including the time and context for claim construction and dispositive motions. It essentially places Rollex in a position of having "sandbagged" the Court in previously representing to the Court that the matter of infringement was ripe for summary judgment, and that the "generally horizontal imperforate top wall" limitation was the only one in dispute for claim construction, after which summary judgment briefing on the matter of infringement should proceed. In essence, Rollex's position has been a moving target throughout the litigation.

Early in this case, on April 29, 2010, Rollex filed a Pre-Motion Conference Request[4] (Dkt 8), seeking a briefing schedule for a summary judgment motion it intended to file concerning Count I of Plaintiff's Complaint (Patent Infringement).[5]  Pursuant to this Court's civil practice procedures, Rollex's Pre-Motion Conference Request set forth the grounds for moving for summary judgment of Quality Edge's infringement claim.  The sole basis for Rollex's motion for summary judgment on infringement was that Rollex's Stealth Soffit did not include the element of "a vent channel having a top wall without any holes (i.e., 'imperforate')" (Dkt 8 at 3).  As stated in its Request, Rollex's position was that no discovery was necessary and infringement should be decided as a matter of law:

> In Count I, QE [Quality Edge] alleges that Rollex's Stealth Soffit™ infringes QE's '224 Patent.  Infringement can only be found where an accused product includes each and every element of a patent's claim.  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997).  One of the required elements found in each of the claims of the '224 Patent is that the soffit include a vent channel having a top wall without any holes (i.e., "imperforate"):
>
> > [the] vent channel portion … defined by a generally *horizontal imperforate top wall* and inclined perforate sidewalls … ('224 Patent, claim 1, col. 5, lns. 17-21; claim 42, col. 8, lns 5-8) (emphasis added).[1]
>
> It is undisputed that Rollex's accused Stealth Soffit™ does not meet this element.  As shown in the depiction of Rollex's Stealth Soffit™ set forth in Exhibit 3 of QE's Complaint (attached as Exhibit A hereto), the top wall of the vent channel of the Stealth Soffit™ includes numerous holes (in other words, it is perforate -- the exact *opposite* of the required "imperforate" element).  *No amount of argument or*

---

[4]Pursuant to this Court practice guidelines, a Pre-Motion Conference is required before filing any dispositive motion.  To request a conference, the moving party must file a Request with a brief description of the grounds for the motion.  The opposing party must file a Response, stating the grounds, if any, for opposing the motion.  The Court then conducts a conference on the record, generally in chambers with counsel, to discuss the motion and the parties' positions, and sets a briefing schedule.  Judge Neff's Information and Guidelines for Civil Practice, Sec. IV.

[5]Rollex's Request also addressed two other counts not at issue here.

*discovery can change the undisputed facts* that: (1) each of the claims of the '224 Patent requires that the top wall of the vent channel have no holes, and (2) the top wall of the vent channel in the Stealth Soffit™ has holes. Since the accused Stealth Soffit™ does not meet this required element found in each of the claims of the '224 Patent, there can be no infringement of the '224 Patent as a matter of law. *See e.g. Edward Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1335 (Fed. Cir. 2009) (affirming grant of summary judgment of noninfringement).

(Rollex PMC Request, Dkt 8 at 3) (emphasis added) (footnote omitted). At the Pre-Motion Conference, the Court discussed the parties' positions on the issue of infringement at length (Tr. 7/28/10, Dkt 50 at 13-26). Rollex's counsel represented that no discovery was necessary to decide the question of infringement on summary judgment:

What Quality Edge I think is doing here, and we don't need any discovery to figure this out. We have the accused device and we have the patent. And Your Honor can construe the claims in the context of a summary judgment decision. No amount of discovery is going to disclose anything different than what we already know.

(*Id.* at 18.) Counsel for Quality Edge agreed with the order of proceeding, although counsel expressly considered that the Court might not rule in favor of Quality Edge on the claim construction issue:

And we believe that there is little infringement; that when you construe the phrase a "generally horizontal imperforate top wall," that allows some perforations on the top wall under federal circuit precedence, and that to the extent that the Court were to come to a different conclusion, that there could still be infringement under the doctrine of equivalents.

But let me just step back for a second.

I -- we believe that claim construction now is a good idea. I mean I think when you determine infringement versus or non-infringement that's a two-step process: Claim construction by the court as a matter of law, and then application against the accused product and see whether or not an element by element basis there is everything is literally present or it's present under the doctrine of equivalents.

But it's our position that we agree that at least with respect to the claim construction portion of this, that this should be done sooner than later. Because it

would help possibly narrow the issues, you know, there is before the Court. If we do claim construction early in this case, then, you know, perhaps both parties would be filing cross motions for summary judgment on this issue. Or maybe it goes away depending upon the claim construction.

So our thought would be that we would do claim construction and then address the motions for summary judgment as soon as we have a claim construction.

(*Id.* at 19-20.)

The Court proceeded with claim construction on the basis of counsel's representations at the Pre-Motion Conference. The Court ordered briefing, conducted a *Markman* hearing, and issued a written opinion and order construing the sole aspect of the patent claims at issue. Having received an adverse ruling on claim construction, Rollex has now reversed course, and argues that the question of infringement requires discovery and additional evidence, including expert opinions. Rollex's current position is not well-grounded in fact or the law.

The Pre-Motion Conference procedure, and counsel's representations in court filings and on the record, make it clear that Rollex initiated the summary judgment proceedings with the representation that the sole limitation at issue was the top wall limitation, and it was necessary for the Court to resolve only a narrow issue of claim construction to make a summary judgment ruling on infringement. Rollex now backtracks from this position by: (1) arguing the Court's claim construction resulted in new factual issues precluding summary judgment, and (2) expanding its infringement challenge to yet another limitation—the "generally trapezoidal limitation."

Rollex's attempt to explain or justify its change in position as a result of the Court's claim construction is unavailing for several reasons. First, the Court's claim construction merely accepted the interpretation of the language proposed by Quality Edge in the Pre-Motion Conference filings and the *Markman* briefs, so the construction could not have been a surprise to Rollex. During the

14

*Markman* phase of this case, Rollex raised no concerns with the construction nor did Rollex assert in any way that the proposed construction was definitionally confusing or created new factual issues that would render the anticipated summary judgment proceedings futile.

Rollex belatedly attempts to advance an entirely new legal position concerning infringement focusing on the use of the word "a" in the phrase "a view" in the top wall limitation claim construction, which the Court accepted as: "defined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves." Rollex asserts that the phrase "hidden from a view underneath the eaves," unlike the phrase "hidden from view," used in the sidewall limitation, is indefinite as to which view must be taken. It appears that Rollex has reinvented its entire infringement argument in the proverbial attempt "to have another bite at the apple," for which this Court finds no justification given the proceedings to date.

Regardless, in the context of this case and the parties' arguments, the Court finds no meaningful distinction between the phrases, based merely on the insertion of the word "a."[6] The parties focused their infringement arguments in this case on whether the top wall limitation—"generally horizontal imperforate top wall," should be construed to mean "generally horizontal and generally imperforate" (as Quality Edge argued) or "generally horizontal and imperforate" (as Rollex argued). After full briefing and a hearing, the Court agreed with Quality Edge and adopted Quality Edge's proposed construction. Contrary to Rollex's argument, no further construction or refinement is necessary.

---

[6]In fact, if the simple deletion of the word "a" will cure any purported indefiniteness and need for discovery, the Court would be inclined to revise the claim construction to omit the word "a."

And while Rollex may be correct that its advertising materials may not be used to establish infringement, that does not require the Court to ignore common sense in favor of contrived, nonsensical permutations of obvious concepts. Rollex publicly touted its Stealth Soffit design as incorporating rows of small holes "hidden from view," which clearly reflects the essence of Rollex's design and marketing claim—that the perforations are not visible from underneath when the soffit is installed—which coincides with the Court's claim construction that the perforations in the top wall of the panel be "hidden from a view" underneath the eaves. Rollex's attempt to defeat the patent infringement claim by divining expert testimony that the perforations in the top wall are not hidden from a view in all *conceivable* or *possible* locations underneath the eave is nonsensical given its own advertising claims.

Finally, in light of Rollex's litigation of this case and its representations to the Court discussed above, the Court rejects Rollex's cursory, belated, new-found argument that the Stealth Soffit does not meet the "generally trapezoidal" limitation or at least there is a question of fact whether it does, and therefore summary judgment is precluded. Rollex's line-drawing depiction of the accused Stealth Soffit vent channel as having eight distinguishable sides is belatedly raised, contrived, and moreover, unpersuasive since it disregards the word "generally," which defeats this argument on the merits. Accordingly, Quality Edge is entitled to summary judgment on the issue of infringement.

## V.  INVALIDITY CLAIMS

Quality Edge moves for summary judgment of Rollex's invalidity counterclaim with respect to indefiniteness, and for dismissal of any remaining counterclaims of invalidity. Rollex cross-moves for summary judgment in its favor on invalidity for indefiniteness under 35 U.S.C. § 112, ¶ 2.

"A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims …." 35 U.S.C. § 282. The presumption of patent validity places a burden on a challenger to prove invalidity by clear and convincing evidence. *Sciele Pharma Inc. v. Lupin Ltd.,* 684 F.3d 1253, 1260 (Fed. Cir. 2012); *Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). Thus, in the context of summary judgment, a moving party seeking to invalidate a patent bears the burden of proof:

> When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits. … Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise. Alternatively, a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent. In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor.

*Eli Lilly,* 251 F.3d at 962.

Because the patent itself carries a presumption of validity and requires proof of facts supporting invalidity by clear and convincing evidence, until an accused infringer comes forward with factual evidence showing invalidity, a patentee has no burden to present factual evidence affirmatively establishing the validity of its patent even in support of its own motion for summary judgment of validity. *Massey v. Del Labs.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997). Thus, "to prevail on [a] motion for summary judgment of validity, [a patentee] need not have presented any factual evidence." *Id.*

A.  Invalidity for Indefiniteness

Rollex's Counterclaim, Count II, alleges only that "[t]he '224 Patent, and each claim thereof, is invalid for failure to satisfy one or more of the conditions of patentability set forth in Title 35, including, *inter alia*, 35 U.S.C. §§ 101, 102, 103, 112, 116 and/or 132" (Ans. & Countercls., Dkt 18 at 22).  Rollex's motion for summary judgment on invalidity, however, is founded more specifically on indefiniteness resulting from the Court's claim construction of the top wall limitation:  "defined by a generally horizontal imperforate top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves."  Rollex argues that each of the claims of the '224 patent is invalid for indefiniteness because, as construed by the Court, the limitation does not adequately inform the public of the scope of the invention because infringement depends entirely on some arbitrary location not defined in the specification of the '224 patent.

The question of validity and definiteness are inexorably linked under 35 U.S.C. § 112, ¶ 2. *American Innotek, Inc. v. United States*, ___ Fed. Cl. ____, 2013 WL 2320037, at *15 (Ct. Fed. Cl. 2013).  "Every patent's specification must 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.'" *Datamize,* 417 F.3d at 1347 (quoting 35 U.S.C. § 112, ¶ 2 (2000)).  "The purpose of the definiteness requirement under 35 U.S.C. § 112, ¶ 2 is 'to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.'" *American Innotek*, 2013 WL 2320037, at *15 (quoting *Datamize,* 417 F.3d at 1347).  "Patent claims are indefinite when they are not 'amenable to construction,' or are 'insolubly ambiguous.'"  *Id.* quoting *Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1375 (Fed. Cir. 2001)).  *See also Halliburton Energy Servs., Inc. v. M-I LLC,* 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("Even if a

claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

Rollex specifically argues that the '224 patent is invalid as construed because "[w]hether or not a soffit panel having perforations in a top wall infringes depends entirely on whether or not a person underneath the soffit has 'a view' of the perforations, but the patent is entirely silent on where this 'a view' is, and different locations underneath the eaves yield different results" (Rollex Mot. Br., Dkt 71 at 6). Thus, the patent is indefinite because the construction "requires that an artisan make a separate infringement determination for every set of circumstances … and [] such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not) …." *See Halliburton*, 514 F.3d at 1255. *See also Honeywell Int'l, Inc. v. Int'l Trade Comm'n,* 341 F.3d 1332, 1340-42 (Fed. Cir. 2003); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC,* 349 F.3d 1373, 1384 (Fed. Cir. 2003).

Rollex also argues that, as construed, the patent does not teach where "a view underneath the eaves" is located. That is, the top wall limitation, as construed by the Court as "hidden from **a view** underneath the eaves," does not require that the top wall perforations be "hidden **from view** underneath the eaves," which, with the absence of the word "a," would mean that the perforations could not be visible from any view from below. Rollex asserts that the word "a" improperly makes infringement depend on some unspecified view. Further, there are multiple possible views of a particular soffit's top wall underneath the eaves. Rollex thus argues that to the extent the claims require that any perforations in the top wall be hidden from any single view, as opposed to all views as with the perforate sidewall limitation, the claims are indefinite because the claims make infringement turn solely on the location where a person happens to stand underneath the eaves and

whether or not from that location he has "a view" of the perforations in the soffit's top wall. If he

does, there is no infringement; if he does not, there is infringement, which is "the epitome of

indefiniteness." *See Geneva Pharms.*, 349 F.3d at 1384. Rollex has engaged a technical expert,

Gene Olson, who measured various views underneath the eaves of the Stealth Soffit, whose expert

opinion purportedly shows that the top wall perforations in the Stealth Soffit are visible from view

in 75 percent of the locations underneath the eave, as demonstrated by the expert's calculations.[7]

For the reasons noted above with respect to the patent infringement claim, Rollex's argument

fails: the argument is belatedly made, inconsistent with Rollex's own positions both before and after

this litigation was commenced, and is a product of an attempt to parse this patent case into disjointed

bits that unduly prolong this litigation.

Had Rollex legitimately viewed the construction adopted by the Court as inherently

indefinite, Rollex certainly could have raised that contention in the course of the claim construction

briefing and decision. The language adopted was the exact language proposed by Quality Edge in

their claim construction brief. If the language, and specifically the word "a" makes the limitation

so obviously confusing and indefinite, it should have been apparent to Rollex during the claim

construction phase of this case. Rollex delayed until after the *Markman* briefing, a full hearing and

the Court's Opinion and Order, to bring this alleged failing to the Court's attention, a tactic which

comes at the expense of Court time and resources. If the alleged shortcoming in the language is so

obtuse that Rollex did not discover it until after the claim construction phase of this case, then it is

questionable whether it rises to the level of such indefiniteness that the patent is rendered invalid.

---

[7]Such a claim here certainly undermines the veracity of Rollex's advertising claims in Stealth
Soffit brochures and press releases that the top wall perforations are hidden from view.

Either way, Rollex's argument is an attempt to reinvent its defense to the patent infringement claim after an adverse claim construction decision.

Contrary to Rollex's argument, this case does not present circumstances analogous to those in *Halliburton*, in which "the Federal Circuit attempted to determine the meaning of the claim phrase 'fragile gel drilling fluid,' and whether it would meet the claimed functional requirement of being 'capable of suspending drill cuttings and weighting materials at rest' in a patent directed to a specific oil field drilling process" (Rollex Mot. Br., Dkt 71 at 4, citing *Halliburton*, 514 F.3d at 1246). There the court determined that:

> under Halliburton's proposed construction in this case, an artisan would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy (formation geology, wellbore size, depth, angle, etc.). In other words, a given fluid might be adequate to suspend drill cuttings in some formations and/or well configurations, whereas in others it would not be. When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.

*Id.* at 1254-55.

Here, an artisan would know whether the soffit panel produced a result when installed that permitted the soffit to vent air with "no unsightly perforations"—the exact Stealth Soffit advertising and promotional claims made by Rollex to the public at large. If the public at large can determine whether the product's top wall perforations are hidden from a view underneath the eaves, then certainly those persons having ordinary skill in the art can make such a determination in deciding whether a potential infringement exists.

The '224 patent is not invalid for indefiniteness as Rollex contends. Rollex's motion for summary judgment that Claims 1-47 of the '224 Patent are invalid under 35 U.S.C. § 112 is denied. Quality Edge's cross-motion for summary judgment on this ground is granted.

## B. Remaining Claims of Invalidity

Quality Edge also moves for dismissal of any additional claims that the '224 Patent are invalid on the ground that Rollex has failed to meet the pleading standard for such claims under the standards in *Iqbal* and *Twombly*. The Court agrees in substance. As the Court noted at the Pre-Motion Conference for the instant motions, Rollex's counterclaim for invalidity as stated is a mere bare-bones invalidity allegation devoid of any specific basis, nature or factual substance.

Rollex nonetheless asserts that dismissal of its invalidity counterclaim is premature and that it is entitled to discovery to determine the necessary facts to build an invalidity case. Rollex further states that it is aware of potentially invalidating prior art, for example, U.S. Patent No. 6,941,707.

The parties dispute whether bare statutory pleadings are sufficient to survive a motion to dismiss an invalidity counterclaim (*see* Rollex Resp., Dkt 73 at 10-11; Quality Edge Reply, Dkt 75 at 8-9). The Court need not resolve this legal dispute. On the record before the Court, and given the litigation history of this case, the Court is not persuaded that Rollex has established or can establish a sufficient basis for its potential additional claims of invalidity. However, in a measure of caution, the Court will set a scheduling conference to further evaluate Rollex's asserted bases for additional invalidity defenses and assess the need for discovery, after which the Court may entertain a renewed motion to dismiss from Quality Edge. Quality Edge's motion to dismiss is therefore denied without prejudice.

## VI.  EVIDENTIARY AND DISCOVERY MOTIONS

Rollex has filed four evidentiary or discovery related motions in conjunction with the parties' cross-dispositive motions.  In light of the Court's above reasoning and decision on the dispositive motions, the motions are denied.

### A.  Leave to Submit Expert Declaration

Rollex requests leave to submit an expert declaration in support of Rollex's Motion for Summary Judgment of Invalidity for Indefiniteness under 35 U.S.C. § 112 (Dkt 53) (*see* Aff. of Gene E. Olson, Dkt 54, Ex. A).  Rollex contends that expert declarations supporting a finding of invalidity for indefiniteness are entirely appropriate and proper, and the Court erred in indicating at the Pre-Motion Conference that it would not permit Rollex to file an expert declaration.  The declaration provides the expert's analysis of the claims of the '224 Patent in light of the Court's claim construction and contains two concluding opinions:

> 22.     Whether the perforations in the top wall of a single channel are hidden or not depends on the angle of sight of the top wall, which is dictated by the location of a person underneath the eaves.

> 23.     When the accused Stealth Soffit is installed in a generally horizontal orientation, the determination of whether perforations in the top wall are hidden from "a view" underneath the eave is entirely dependent upon where an individual is specifically located underneath the eave, not any structural attribute of the top wall of the Stealth Soffit.

(Dkt 54, Ex. A ¶¶ 22-23)

As Quality Edge points out, the Court previously denied Rollex's request to file an expert opinion (Tr. 9/10/12, Dkt 51 at 21-23), and the instant motion is essentially a belated motion for reconsideration.  Rollex fails to set forth any grounds warranting reconsideration.  "Generally, and without restricting the discretion of the Court, motions for reconsideration which merely present the

same issues ruled upon by the Court shall not be granted." W.D. Mich. LCivR 7.4(a). The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled, but he must also show that a different disposition of the case must result from a correction thereof. *Id.*

Moreover, as discussed above and cogently set forth in Quality Edge's response (Dkt 58), at the time of the July 28, 2010 Pre-Motion Conference, Rollex took the position that no discovery was necessary to decide the issue of infringement, and Rollex chose not to pursue any such discovery. During claim construction briefing, neither party submitted expert testimony, and they instead relied upon intrinsic evidence—the patent itself and the patent file history—in their claim construction briefing. The only extrinsic evidence that Rollex relied upon was a dictionary definition (*see* Dkt 21-4). Thus, while both parties had the opportunity to conduct discovery and to rely upon expert testimony during claim construction, neither party chose to take any discovery or to submit expert evidence.[8]

Also, as Quality Edge points out, Rollex is now proffering a claim construction expert affidavit under the guise of indefiniteness. This expert affidavit simply reiterates arguments Rollex made in the claim construction hearing (*see* Tr. 10/4/11, Dkt 39 at 21-22) and in its Motion for Reconsideration concerning claim construction (Dkts 37-38). The Court has already rejected these arguments. To the extent that Rollex intended to submit expert testimony on "claim construction," it should have done so during the claim construction phase of this case.

---

[8]In accordance with counsel's discussion with the Court on the record at the July 28, 2010 Pre-Motion Conference, the Court's Order (Dkt 16) stated "the parties shall proceed with briefing the claim construction issues relevant to summary judgment of Count 1," and that "discovery on all other matters shall be deferred until the Court has ruled on the above claim construction issues or until further Order of the Court."

Contrary to Rollex's assertion, case law does not dictate that expert testimony must be permitted under the circumstances presented here. Rollex's proffered expert declaration challenging the Court's claim construction is untimely and improper. Rollex's motion for leave to submit the expert declaration is denied.

## B. Leave to Conduct Discovery

Rollex moves the Court for leave to conduct limited discovery to properly oppose Quality Edge's Dispositive Motion Regarding Patent Infringement and Validity ("Quality Edge's Motion"), and (a) grant Rollex additional time to oppose Quality Edge's Motion, and (b) defer ruling on Quality Edge's Motion until such discovery and briefing on the Motion are complete (Dkt 56). Rollex asserts that it should be allowed discovery because: (1) Quality Edge has submitted the declaration of Paul VanderLaan, Quality Edge's Vice President of Operations, in support of its motion, and (2) it would fly in the face of standard patent litigation procedure for Rollex to be denied essential discovery.

To some extent, this motion is merely a motion for reconsideration, the Court having previously denied Rollex's requests for much of this discovery on the record. Regardless, having now fully considered the substantive issues presented in the dispositive motions, the record, and the procedural history of this case, the Court again denies leave to conduct discovery with respect to the issue of patent infringement. The Court denies without prejudice the motion with respect to issues of invalidity other than indefiniteness in concert with the Court's decision on the dispositive motions.

As discussed above, Rollex framed the issues of infringement in this case at the outset, requested that the Court proceed with a motion for summary judgment following a narrow issue of

claim construction since no discovery was necessary to resolve the question of infringement on the facts of this case. Only after receiving an adverse ruling did Rollex reverse course and attempt to "cry foul" based on the denial of discovery. The Court finds Rollex's change in position counterproductive and an impediment to the Court's efforts to efficiently and fairly adjudicate this case, and manage its docket, based on the parties' own representations and conferences with the Court. Rollex is not entitled to discovery concerning infringement or the related issue of invalidity based on indefiniteness, given Rollex's previous representations that there were no issues of fact presented.

With regard to discovery concerning other bases of invalidity, the Court has previously expressed its skepticism that Rollex is entitled to proceed with discovery given Rollex's utter failure to specify the nature of these claims or any factual basis for them in its Counterclaim. Nonetheless, in a measure of caution, the Court will reserve its decision on the latter discovery pending further proceedings to fully consider the parties' positions and the record.

### C. Leave to Submit Expert Declaration

Rollex requests leave to submit an expert declaration in opposition to Quality Edge's Dispositive Motion Regarding Patent Infringement and Validity ("Quality Edge's MSJ") (Dkt 66). This proffered declaration is a second declaration from Gene E. Olson. Both declarations contain much of the same content. This declaration merely specifically addresses and offers support for Rollex's contentions in opposition to Quality Edge's dispositive motion on the issues of infringement and validity, i.e., that the Court's claim construction concerning the top wall limitation results in indefiniteness based on Olson's calculations that the top wall perforations are visible from

approximately 75 percent of possible locations underneath the eaves, and Rollex has a challenge based on the trapezoidal shape of the vent channel.

Leave to submit this second expert declaration is denied for the reasons set forth above with respect to the Court's rejection of Rollex's substantive arguments on Quality Edge's dispositive motion, and for the exhaustive reasons the Court has denied additional discovery on the issues of infringement and invalidity for indefiniteness. Rollex's argument and efforts to now submit this expert declaration is contrary to Rollex's position on the issues presented in this patent litigation, undermines the progress of this case, and is not necessary or helpful to resolution of the issues before the Court. Rollex's excessive attempts to add evidentiary support for its belated substantive arguments are inconsistent with its position throughout this case, as noted in Quality Edge's brief opposing this motion. After taking the position that there were no factual issues with regard to infringement and the Court could and should proceed with claim construction and summary judgment, Rollex merely attempts to backtrack to create issues of fact through its expert declarations to preclude an unfavorable decision on the issue of patent infringement.

## D. Supplemental Brief

Lastly, Rollex seeks leave to supplement its opposition to Quality Edge's Motion Regarding Patent Infringement and Validity by filing a supplemental brief (Dkt 80). Rollex's proposed supplement includes a five-page brief and 83 pages of exhibits. Rollex seeks to supplement its Opposition to raise arguments concerning prior art it recently discovered. In particular, Rollex contends the asserted claims of the '224 Patent are invalid in view of a brochure printed in 1997. Rollex asserts that there is good cause to grant its motion to supplement because it was only after the close of briefing on the dispositive motions that Rollex discovered significant prior art that

purportedly invalidates each of the asserted claims of the '224 Patent for lacking novelty, under 35 U.S.C. § 102(a), and obviousness, under 35 U.S.C. § 103.

Rollex's proposed supplement addresses issues of invalidity beyond the claim of invalidity for indefiniteness. Given that the Court has limited its instant decision on invalidity to only the indefiniteness argument and has denied without prejudice Quality Edge's motion with respect to other grounds for invalidity, the supplement is of no import. This motion is denied.

## VII. CONCLUSION

For the foregoing reasons, the Court finds Rollex's arguments disingenuous in light of Rollex's position throughout this case and its representations to the Court in proceedings during the course of this litigation. Rollex having framed the dispute in this case at the outset for resolution by the Court, now attempts to redesign the dispute to avoid what clearly has become the law of this case, the Court having rejected Rollex's claim construction arguments.

The Court grants summary judgment in favor of Quality Edge on the issue of infringement and on the issue of invalidity for indefiniteness. The Court denies Rollex's motion for summary judgment that Claims 1 - 47 of the '224 Patent are invalid. The Court denies Rollex's motions to submit expert declarations and a supplemental brief. The Court also denies Rollex's motion to conduct discovery (Dkt 56), except the Court denies this motion without prejudice with respect to issues of invalidity other than indefiniteness.

The Court will set a scheduling conference, at which it will consider all remaining substantive issues and determine the appropriate and complete course of proceedings to resolve this patent case.


Dated: June 28, 2013                          /s/ Janet T. Neff
                                               JANET T. NEFF
                                               United States District Judge