UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUALITY EDGE, INC.,

       Plaintiff/Counter-Defendant,       Case No. 1:10-cv-278

v.       HON. JANET T. NEFF

ROLLEX CORPORATION,

       Defendant/Counter-Claimant.
_____/

**OPINION**

This patent case is before the Court on Plaintiff Quality Edge, Inc.'s Motion for Permanent Injunction (Dkt 135) following this Court's ruling that Rollex's Stealth Soffit™ product infringed Quality Edge's '224 patent (U.S. Patent No. 7,137,224), and the Court's dismissal of Rollex's invalidity defenses and counterclaims. Defendant Rollex filed a Response opposing the Motion (Dkt 139), and Quality Edge filed a Reply (Dkt 142). Rollex thereafter filed a motion to compel production of a license and for discovery related to the issuance of the injunction (Dkt 148), which was referred to the Magistrate Judge. Following a hearing, the Magistrate Judge ordered that Quality Edge must produce the license documents at issue, after which the parties could file limited supplemental briefs on the injunction motion; the Magistrate Judge denied any further discovery (Dkt 155). Having fully reviewed the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the Motion for Permanent Injunction. *See* W.D. Mich. LCivR 7.2(d). The Court grants a permanent injunction, but not the full extent of the relief sought by Quality Edge.

## I. Legal Standard

Under the Patent Act, the courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283; *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). The parties agree that the familiar four-factor test applies in deciding whether Quality Edge's motion for a permanent injunction should be granted. An injunction may enter if the movant:

> demonstrate[s]: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

## II. Discussion

The parties provide extensive argument, and case and evidentiary citations to support their opposing positions on a permanent injunction. The general legal principles are not at issue, and the Court does not find either party's citation to particular case outcomes dispositive. Rather, it is the Court's review of the parties' arguments in the context of this case and the record evidence that justifies but limits the Court's grant of injunctive relief.

### A. Entry of a Permanent Injunction

The parties disagree that Quality Edge has met its burden of proving that a permanent injunction is warranted. Having considered the proceedings in this case to date and the evidence presented, the Court concludes that the four factors weigh in favor of a permanent injunction.

*Factor 1: Irreparable Injury*

Quality Edge argues that this factor is met because the typical considerations that

demonstrate irreparable harm are all present in this case, including, most critically, that Rollex is a direct competitor of Quality Edge with respect to the vented aluminum soffit panels at issue in this patent suit. Further, Rollex's infringement has caused a loss of market position for Quality Edge's patented TrueVent® product, as well as related accessories, harm to Quality Edge's reputation as an innovator, and loss of goodwill—types of harm not fully compensable by money.

The Court finds this factor well-supported by the evidence and the parties' positions throughout this case. First, contrary to Rollex's argument, the fact that Quality Edge did not earlier move for an injunction is of no import on the determination of irreparable injury. This case has been beset by a number of detours, for both substantive litigation and strategic positioning, after the parties' initial representation that this case would be resolved by the Court's decision on a very straightforward question of claim construction and infringement. The motion for a permanent injunction is timely filed following the Court's adjudication of the issues of infringement and validity. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-49 (Fed. Cir. 2011); *Edwards Lifesciences AG v. CoreValue, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012). Quality Edge's quest for injunctive relief was clear from the outset of this case, with the filing of the Complaint. The Court finds no support for Rollex's claim that Quality Edge's failure to earlier move for an injunction undermines any claim of irreparable injury (*see* Dkt 139 at PageID.2485).

Rollex otherwise disputes that Quality Edge has suffered irreparable harm based on the considerations cited by Quality Edge. Rollex contends that Quality Edge's motion suffers from deficiencies in the proof of irreparable harm, and that the only evidence in support is the self-serving declaration of its President, D. Scott Rasmussen—which is either silent on the critical elements of proof or wholly conclusory—along with a handful of exhibits related to the parties' marketing.

3

While some of Rollex's points concerning the nature and extent of the evidence are well taken, they do not undermine the overall proofs showing irreparable harm.[1]

The proofs clearly show that Rollex is a direct competitor with respect to the patented vented aluminum soffit, as borne out by record evidence of Rollex's own advertising directly comparing its Stealth Soffit™ panel to Quality Edge's patented TrueVent® product. The Court is fully persuaded that Quality Edge has shown "reputational" damage to support a permanent injunction. The Rasmussen Declaration provides an ample context to establish that Quality Edge is an innovator in the building materials industry and has built a market around its patented technology (*see* Decl. ¶¶ 7-11, Dkt 137 at PageID.2477-2478). *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013); *see also Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.").

The record evidence establishes a concerted effort in Rollex's marketing to discredit Quality Edge's competing products. Such comparative and disparaging advertising and marketing satisfy the evidentiary showing of reputational harm necessary to support injunctive relief. It follows also that such claims are intended to supplant Quality Edge's goodwill in the market place—further supporting Quality Edge's contention of irreparable harm.

---

[1] As Quality Edge points out, Rollex's argument has its own inherent credibility issues given Rollex's prior position that discovery was unnecessary to proceed with the motion for a permanent injunction. *See* Reply, Dkt 142 at PageID.3666 n.9 (in which Quality Edge notes that at the Aug. 20, 2015 hearing, "Rollex took the position that 'there ***shouldn't be any*** discovery during the injunction motion'" (8/20/15 Tr., Dkt 125 at PageID. 2303). Accordingly, "QE's Motion and Mr. Rasmussen's Declaration focused on facts that were already of record or otherwise available to Rollex").

Rollex asserts that Quality Edge does not face any loss of market share because sales of the vented soffit panels are linked to sales of related product lines, including other residential house products such as siding, soffits, fascia, gutters, and rainware. Rollex states that distributors' decisions as to which manufacturer's products to carry are not based on the manufacturer's hidden vent soffits, but instead "primarily on price, quality of products, assortment of overall products and colors, and general support and reputation in the industry" (Resp., Dkt 139 at PageID.2492, citing Shield Decl., ¶ 16). Rollex states that, in fact, distributors cannot simply sell Quality Edge's TruVent® instead of Rollex's Stealth Soffit™ because they are different sizes and are manufactured for and targeted to different markets and customers (*id.* at PageID.2493, citing Shield Decl., ¶¶ 9-15).

In the Court's view, these and other related arguments militate as much in favor of injunctive relief as against, since the loss of customers as a result of Rollex's infringement would have greater implications in terms of the lost market share in related products. And damage to Quality Edge's reputation from Rollex's negative marketing would have an impact on which manufacturer's entire product lines to carry.

The Court is fully persuaded that the irreparable harm factor weighs in favor of the injunction.

*Factor 2: Monetary Damages are Inadequate*

Given the nature of the irreparable harm, the Court also finds that monetary damages are inadequate to compensate Quality Edge for Rollex's infringement. "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the patentee '*has suffered* an irreparable injury.'" *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir.

5

2010) (quoting *eBay*, 547 U.S. at 391 (emphasis added)). *See also Robert Bosch*, 659 F.3d at 1154-56 (considering "lost market share, lost business opportunities, and price erosion" in analyzing both irreparable harm and lack of adequate legal remedies). Here, monetary damages are inadequate to compensate Quality Edge for loss of market share, reputation and goodwill.

Additionally, the evidence indicates, and Rollex does not dispute, that sales of its Stealth Soffit™ have continued following this Court's ruling in favor of Quality Edge on infringement. The loss of potential new customers is a recognized harm found to support an injunction. *See Robert Bosch*, 659 F.3d at 1151.

Accordingly, legal remedies are inadequate to redress the harm that Quality Edge has sustained and will continue to sustain as a consequence of Rollex's infringement. This factor weighs in favor of an injunction, particularly in light of Rollex's position as Quality Edge's direct competitor. *Douglas Dynamics*, 717 F.3d at 1345 ("Mere damages [may] not compensate for a competitor's increasing share of the market," particularly where the patentee competes in a market "in part created with its investment in patented technology.").

*Factors One and Two: Supplemental Briefing*

In its supplemental brief (Dkt 156), Rollex asserts that earlier this year Quality Edge granted a royalty-free, unrestricted license to the '224 Patent ("License") to the world's largest building materials company, Saint Gobain and its wholly owned subsidiary, CertainTeed (collectively "CertainTeed"). Rollex argues that because Quality Edge now expressly allows the world's number one manufacturer to flood the market with unlimited patented soffit panels without restriction or payment, Quality Edge can hardly claim that Rollex's presence in the same market causes irreparable harm. Rollex contends that the License provides yet another reason why Quality Edge

6

cannot prove irreparable harm.  Rollex additionally argues that the license proves that money damages would suffice to redress any harm because Quality Edge's licensing agreement indicates either:  (1) the '224 patent has *de minimis* value since it was included "at no cost" as part of the larger deal with CertainTeed, or (2) at least that the value of the '224 patent was "monetized" by Quality Edge (Dkt 156 at PageID.4009).

Quality Edge asserts in response that Rollex mischaracterizes the licensing transaction, which stemmed from an earlier Private Label Agreement that had nothing to do with CertainTeed's soffit products or the '224 patent.  CertainTeed subsequently requested a license of the '224 patent for its hidden vent *vinyl* soffit products, which do not directly compete with Quality Edge's patented *aluminum* TruVent® product.  "While certain dependent claims of the '224 Patent cover *aluminum* hidden vent soffits, the broader claims of the '224 Patent would cover hidden vent soffits made from any material"; thus, CertainTeed requested a license to the '224 patent for its vinyl hidden vent soffit product (QE Suppl. Br., Dkt 157 at PageID.4104).  Quality Edge notes that unlike Rollex's marketing, which directly compares its Stealth Soffit™ product to the only other aluminum hidden vent product on the market, TruVent®, CertainTeed does not compare its vinyl hidden vent product to Quality Edge's patented TruVent® product.  Thus, unlike Rollex, CertainTeed is not a direct competitor, and as the Federal Circuit has noted, prior licenses to non-direct competitors usually do not show a lack of irreparable harm, *see*, e.g., *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328-29 (Fed. Cir. 2008) (Dkt 157 at PageID.4105).

While it is true, as Rollex points out, that Quality Edge emphasized in its initial briefing that it had not licensed the '224 patent, the Court does not find that the CertainTeed License negates the Court's finding of irreparable harm or that monetary damages are inadequate under the

7

circumstances presented. CertainTeed's product does not directly compete with the patented TrueVent® product. Nor does the license arrangement change the nature and extent of the harm caused by Rollex's infringement.

*Factor 3: Balance of Hardships*

Quality Edge argues that this factor favors entry of an injunction because without relief, Quality Edge will suffer further injury such as continued loss of market share, harm to reputation, and loss of goodwill, whereas any harm Rollex faces is limited because Rollex has noninfringing alternative aluminum soffits it can deliver to the market. And the potential harm to Quality Edge is exacerbated by the disparaging nature of Rollex's marketing and competition.

Rollex counters that because Quality Edge faces injury that is compensable with money damages, the balance of harms favors Rollex. Thus, Quality Edge will face no harm but Rollex will lose the ability to sell one of its products, and significantly, lose the benefit of a patent Rollex has obtained on the Stealth Soffit™ (Rollex's '603 Patent). Rollex asserts that Rasmussen offers no evidence on the typical considerations for this factor, such as the parties' sizes, products, and revenue sources, and it is clear from the exhibits referenced in his Declaration that the patented technology is not central to Quality Edge's business. Rollex further asserts that this is not a case in which Rollex has built its business on the infringing product, *see Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012). Rather, "Rollex has a diverse, wide-ranging residential housing product line that includes many products that have nothing to do with hidden vent soffit technology" (Dkt 139 at PageID.2498, citing Shield Decl., ¶ 17). Additionally, Rollex's Stealth Soffit™ was "built" on the high quality of the product and the invention of Rollex's own '603 Patent, and an injunction

would destroy Rollex's significant investment in its own patented technology (*id.*, citing Shield Decl., ¶¶ 17, 22-26).

Rollex's arguments are unpersuasive and, again, work both for and against an injunction. As Quality Edge points out, the harm to an infringer's investment in an infringing product is hardly a worthy basis for denying injunctive relief to the patentee. *See Merial Ltd.*, 681 F.3d at 1306. Rollex's admission that it has a diverse, wide-ranging housing product line, coupled with evidence that the Stealth Soffit™ represents a small percentage of Rollex's business, indicates that Rollex would not suffer significant hardship. The Court is persuaded that the balance of hardships factor supports injunctive relief.

*Factor 4: Public Interest*

This final factor does not in any way work against the entry of a permanent injunction. The public interest factor goes to the fundamental nature of patent rights; the public interest is served by "acquiring new technology through the protections provided by the Patent Act …." *Douglas Dynamics*, 717 F.3d at 1346. Here, as in general, the public's interest in the patent system and judicial protection of property rights weighs in favor of granting injunctions against competing patent infringers. *See id.* And this is not a case in which the public interest is disserved by resulting public health or safety concerns or a shortage of product in the marketplace.

Rollex argues that the public interest is disserved in this case because Rollex's Stealth Soffit™ is itself patented, and an injunction would deprive the public of the benefits of that patented technology. "[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863.

9

The Court is not convinced that the public interest is served by sanctioning the marketplace presence of Rollex's competing, but infringing product. Regardless, the Court has fully considered the course of this case and the evidence presented and concludes that this factor weighs, if at all, in favor of issuing a permanent injunction against Rollex's infringement—the public interest is best served by granting the relief sought and duly earned by Quality Edge in this prolonged litigation.

### B.  Nature and Scope of the Injunction

Having determined that a permanent injunction is warranted, the Court must consider the scope of the injunctive relief. The parties do not dispute the Court's discretion to determine the appropriate injunctive relief. "The court possesses 'inherent discretion to fashion equitable relief' and may consider a 'variety of equitable considerations, and responsive equitable remed[ies] in patent cases.'" *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. C 10–3428 PSG, 2013 WL 140039, at *6 (N.D. Cal. Jan. 10, 2013) (quoting *Robert Bosch*, 659 F.3d at 1149 and *Edwards Lifesciences*, 699 F.3d at 1315 (listing various remedies)).

Quality Edge requests that the Court enjoin: (1) Rollex from making, using, selling, offering for sale, or importing the Stealth Soffit™ and products only colorably and/or trivially different, *see Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1293 (Fed. Cir. 2012); (2) enjoin the use of Rollex's Stealth Soffit™ promotional materials, including the brochures and video referenced in the Amended Complaint, and require that they be destroyed; (3) require Rollex to destroy Stealth Soffit™ product in its inventory and to recall and destroy any Stealth Soffit™ product that is at Rollex's distributors or lumberyards; (4) require Rollex to send notice to all of its customers (including distributors and lumberyards to which the Stealth Soffit™ was offered for sale or sold) of the injunction as entered; and (5) order Rollex to provide written verification that it has

complied with all provisions of the permanent injunction. Quality Edge has submitted a proposed order granting a permanent injunction accordingly (Dkt138).

Rollex strenuously objects to any order for the recall and destruction of product in the hands of distributors. Rollex argues there is no basis for such extraordinary relief, and moreover, it does not work to ameliorate the purported irreparable injury, i.e., selling and offering to sell the Stealth Soffit™ to distributors. Rollex states that all of the inventories of Stealth Soffit™ at distributors and lumberyards have already been sold by Rollex (Dkt 142 at PageID.2499-2500, citing Shield Decl., ¶ 28). And Rollex has no control over distributor/customer disposition of product—in many instances, distributors ship the Stealth Soffit™ to numerous additional, geographically-disperse locations, including Alaska, without Rollex's knowledge (*id.* at PageID.2500, citing Shield Decl., ¶¶ 28, 29). Consequently, the costs and burden of repurchasing, reshipping, and other incidental costs associated with recalling Stealth Soffit™ product from Rollex's distributors and customers would be incalculable (*id.*, citing Shield Decl., ¶ 28).

The Court finds Rollex's arguments well founded with respect to the recall and destruction of product. Accordingly, the Court denies injunctive relief requiring the recall and destruction of product that is no longer owned or under the control of Rollex. The provisions pertaining to the recall and destruction of product in Quality Edge's proposed order shall be omitted. Additionally, the Court will extend the time for Rollex's notice to customers of the permanent injunction to twenty-one (21) days, and the time for a verified statement of compliance to twenty-eight (28) days.

### III. Conclusion

Having found that Quality Edge has met its burden of demonstrating that permanent injunctive relief is warranted, the pending motion is granted in part and denied in part; a permanent

11

injunction will enter, limited in scope to the relief herein.

    An Order will enter consistent with this Opinion.


Dated: August 31, 2016                             /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge